ORIGINAL

# In the United States Court of Federal Claims

No. 16-206 T
(Filed: February 3, 2017)

FILED
FEB - 3 2017
U.S. COURT OF
FEDERAL CLAIMS

**NOT FOR PUBLICATION**

GINA BRASHER LANGLEY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

Income Tax Refund; Lack of Subject Matter Jurisdiction; RCFC 12(b)(1); Failure to State A Claim; RCFC 12(b)(6); Untimely Filing; RCFC 12(g); I.R.C. §§ 6511(a), 6532(a), 7422(a).

Gina B. Langley, Neptune Beach, Fla., pro se.

Brian J. Sullivan, Attorney of Record, Tax Division, United States Department of Justice, with whom were Caroline D. Ciraolo, Acting Assistant Attorney General, and David I. Pincus, Chief, Court of Federal Claims Section, and G. Robson Stewart, Assistant Chief, Court of Federal Claims Section, for defendant.

## OPINION

CAMPBELL-SMITH, Chief Judge

This is primarily an income tax refund claim. Plaintiff, Gina Langley, brings her claim without counsel. Defendant is the Internal Revenue Service (defendant or IRS). Plaintiff seeks an income tax refund for five tax years, 2004, 2009, 2011, 2012, and 2013.[1] For 2004, Ms. Langley filed a joint income tax return with her then-husband, Barney Langley. For each of the remaining years, all of which were after the finalization of her divorce from Mr. Langley, Ms. Langley filed an individual income tax return.

Ms. Langley also brings a property-related claim in which she seeks to have the name of her ex-husband removed from the title to the former marital home, which is now

---

1 All references to a tax year are to the corresponding calendar year, January 1 to December 31.

7014 1200 0000 9093 6514

her home. In addition, Ms. Langley asks this court to declare that Suzanne Green, Mr. Langley's divorce attorney, has no interest in her home. During the course of the Langleys' divorce proceeding in Florida, Ms. Green secured an attorney's charging lien on the marital home in response to Mr. Langley's non-payment of legal fees.

Defendant moved for the dismissal of plaintiff's income tax refund claims for four years—2004, 2011, 2012, and 2013—as well as her property claims, for lack of jurisdiction under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). With regard to Ms. Langley's tax refund claims for these four years, for varying reasons, defendant argues that each claim is untimely. As to Ms. Langley's property claims against her ex-husband and Ms. Green, defendant argues the court lacks subject matter jurisdiction over such claims. For plaintiff's income tax refund claim for 2009, defendant concedes jurisdiction, but argues that Ms. Langley has failed to state a claim for which relief may be granted, and requests dismissal under RCFC 12(b)(6).

As explained below, defendant's RCFC 12(b)(1) amended motion is **GRANTED**. Defendant's RCFC 12(b)(6) amended motion with regard to Ms. Langley's income tax refund claim for 2009 is **DENIED**. Ms. Langley's income tax refund claim for 2009 is dismissed sua sponte for lack of jurisdiction under RCFC 12(h)(3). Under RCFC 12(b)(1) and 12(h)(3), the complaint is **DISMISSED** for lack of jurisdiction without prejudice.

## I. Background[2]

### A. Ms. Langley's Cases in Florida State Court

Throughout her claims, plaintiff makes reference to events stemming from her divorce proceedings initiated in 2004, as well as other litigation in the Florida state courts. A limited review of relevant events will assist in understanding plaintiff's complaint before this court.

In September 2004, plaintiff and her then-husband, Barney Joseph Langley, began divorce proceedings in Duval County, Florida, for which proceedings Mr. Langley was represented by Attorney Suzanne W. Green. App. 40-42,[3] ECF No. 1-2 (Sept. 22, 2004 Attorney engagement letter between Mr. Langley and Ms. Green). Ms. Langley asserts that her divorce from Mr. Langley became final on June 21, 2006. Compl. ¶ 27, ECF No. 1.

---

[2] The facts recited here are taken from the complaint and supplemental complaint and attachments thereto. The court makes no finding of fact in this opinion.

[3] The record citations are to the page numbers automatically affixed to the top of every page by the court's CM/ECF system.

Mr. Langley apparently did not pay his legal fees, and with his consent, Ms. Green sought an attorney's charging lien on property owned, at least in part, by Mr. Langley. App. 29 ¶ 6 (Consent Motion for Charging Lien and Motion to Determine Amount of and to Enforce Charging Lien, In re: The Marriage of Gina B. Langley, Wife, and Barney Joseph Langley, Husband, No. 16-2004-DR-009042 (Fla. Circuit Ct. Duval Cty. Mar. 17, 2006)). On May 9, 2006, a Florida circuit judge granted Ms. Green her charging lien, App. 32-33, and Ms. Green recorded her lien on May 15, 2006, App. 26-27.

According to the "Attorney's Judgment and Amended Charging Lien Against Barney Langley," Ms. Green's attorney's charging lien was issued on the property located at 700 Oak Street, Neptune Beach, Florida. App. 26-27. ("By Court Order dated the 9th of May, 2006 and recorded . . . [in] Duval County, Florida, an attorney's Charging Lien was granted against any and all real or personal property of Barney Langley, including but not limited to real property located at 700 Oak Street, Neptune beach, Florida 32266 . . . ."). According to contact information Ms. Langley provided to this court, 700 Oak Street is her current home. See Compl. 10. Plaintiff asserts that Ms. Green obtained her attorney's charging lien "without [her] knowledge or consent." Compl. ¶ 2. Indeed, review of the Consent Motion prepared and filed by Ms. Green reveals no mention of Ms. Langley. See App. 29-30.

As a separate matter, plaintiff held an interest in property on which the mortgagor, Oceanside Bank, foreclosed. See Oceanside Bank v. Langley, No. 16-2009-CA-00-1429-XXXX-MA (Fla. Circuit Ct. Duval Cty. Jan. 7, 2010).[4] In January 2010, a Certificate of Sale was entered, in which the Clerk of Court

> certifies that notice of public sale of the property described in the final judgment . . . the property was offered for public sale . . . . The highest and best bid received for the property in the amount of 100.00 was submitted by Oceanside Bank to whom the property was sold.

App. 106.

The final judgment is not in the record, and the location of the property sold at auction is unclear. However, as Ms. Langley currently lives in the property located at 700 Oak Street, the court finds it likely that Oceanside Bank foreclosed on another

---

4 Oceanside Bank named five defendants in this action, Gina Langley, Barney Langley, Target National Bank, Discover Bank, and Suzanne Green P.A. See App. 106 (case caption). The complaint is not in the record, but Ms. Green's answer is included. See App. 109-110.

property. In a list of marital assets the Langleys owned at the time of their August 2004 separation, they showed two other properties, respectively located at 314 Third Street and 605 10th Avenue, North with both addresses presumably located in Neptune Beach, Florida. Suppl. App. 130, ECF No. 8. The exact location of the foreclosed upon property, however, is immaterial to this court's decision.

B. Ms. Langley's Cases in the United States Tax Court

Prior to filing her income tax refund claims in this court, plaintiff filed two separate actions in the United States Tax Court, one for tax year 2004, and one for tax years 2006, 2008, 2009, and 2010. As explained infra Part I.E, neither case precludes the filing of Ms. Langley's complaint in this court.

1. Income Tax Year 2004 – Section 6015(f) Claim

In November 2012, Ms. Langley filed a petition in the United States Tax Court seeking relief under 26 U.S.C. (Internal Revenue Code, hereafter I.R.C.) § 6015(f) (2012) for income tax years 2004 through 2010. See Langley v. Comm'r, No. 27396-12 (T.C. Nov. 12, 2014) (Order of Dismissal), aff'd per curiam, 612 F. App'x 585 (11th Cir. 2015), cert denied, 136 S. Ct. 840 (2016). Section 6015(f) addresses relief from joint and several liability on a jointly filed return, otherwise known as innocent spouse relief. Because Ms. Langley filed a joint income tax return for tax year 2004 only, that is the sole year for which she could have qualified for relief under section 6015(f). See Langley, No. 27396-12, at 1, 3. The Tax Court dismissed Ms. Langley's petition for lack of jurisdiction, as it was not timely filed. Id. at 3.

2. Income Tax Years 2006, 2008, 2009, and 2010 – Section 6330(d) Claim

In June 2013, the IRS sent plaintiff a "Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330" for four tax years, 2006, 2008, 2009, and 2010. See Suppl. App. 112-116. Section 6330(d)(1) provides that a "person may . . . petition the Tax Court for review of such determination." The IRS informed plaintiff that if she wanted to "dispute this determination in court, [she] must file a petition with the United States Tax Court within 30 days from the date of this letter," Suppl. App. at 67, which Ms. Langley did on July 24, 2013, id. at 104-111 (Petition).

In January 2015, the Tax Court issued its decision. See Langley v. Comm'r, 109 T.C.M. (CCH) 1050, No. 17267-13L, 2015 WL 392980 (Jan. 13, 2015). According to the Tax Court, the IRS issued a supplemental Notice of Determination in November 2014, in which the IRS stated that there were no outstanding balances due for tax years 2008 and 2010; thus the court dismissed those claims as moot. See Langley, 2015 WL

392980, at *5. But the Tax Court sustained the proposed levy to collect unpaid balances for the remaining tax years, 2006 (for $121.48 due) and 2009 (for $3,374.96 due). See id.

C. Ms. Langley's Case Filings In This Court

1. Original Complaint

Plaintiff filed her complaint on February 10, 2016, to which she attached 156 pages of supporting documents.[5] See Compl., ECF Nos. 1 ("original complaint"), 1-2 ("appendix"). Plaintiff requested three forms of relief, including one tax refund claim and two property claims. Ms. Langley's requests are included below.

Tax Refund Claim

> Petitioner most respectfully request[s] this Court order the IRS [to] refund the federal taxes due to Petitioner that totals $51,0683.84 (A pages 15 through 23) plus interest as claimed in Petitioner's Petition served to the government on 11-9-15 USSC in Petitioner's statement of the case 15-6929 (A pages 4 through 14) that the government waived it[]s right to oppose on 11-23-15. (A page two).

Compl. 9 (second request for relief). The internal citations are to documents attached to the complaint, and the reference to the U.S. Supreme Court Case No. 15-6929 is a reference to Ms. Langley's innocent spouse relief claim for tax year 2004 before the Tax Court, for which she ultimately sought certiorari to the United States Supreme Court. See Langley v. Comm'r, No. 27396-12 (T.C. Nov. 12, 2014)( Order of Dismissal), aff'd per curiam, 612 F. App'x 585 (11th Cir. 2015), cert denied, 136 S. Ct. 840 (2016).

Property Claims

> Order Barney Langley, Petitioner's x spouse, be removed from the title to Petitioner's home [in which] he gave his interest to Suzanne Green in

---

[5] The court has reviewed Ms. Langley's filings with care. The court notes that some of the pages filed by Ms. Langley are partial documents, and many pages include significant hand written annotations or marked out passages, which renders some documents difficult to understand. The filings include numerous documents from Ms. Langley's previous legal actions in Florida, her two United States Tax Court actions, including her appeals to the United States Circuit Court of Appeals for the Eleventh Circuit and the United States Supreme Court, and various correspondence between Ms. Langley and the Internal Revenue Service for multiple tax years. The court further notes that there are duplicate documents in the filings.

> September 2004 and abandoned in 2009 so that Petitioner can either sell or repair her homestead.

Compl. 9 (first request for relief).

> This court order that Suzanne W Green has no interest in [her] homestead, Order the judgment recorded by State of Florida on 3-15-15 void, and order Suzanne Worrall Green pay Petitioner the ½ of escrow funds totaling $39,581.96 plus interest since June 8, 2005 and any damages this Court would deem appropriate for the taking of Petitioner['s] private property by an elected official of the state of Florida . . . . Petitioner claimed $1,200,000.00 in damages from the government for loss of use in the uncompensated taking of petitioner's property.

Compl. 9-10 (third request for relief).

2. Amended Complaint **Deemed** a Supplemental Complaint

On May 10, 2016, the Clerk's Office received a filing from Ms. Langley titled "Plaintiff's Prayer for Refund of Federal 1040 Tax that [Defendant] Waived It[]s Right to Respond on November 23, 2015 in USSC Case 15-6929 as Claimed in this Claim on February 8, 2016 #2 and Plaintiff's Objection to the Conflicting Erroneous Notice(s) to the Plaintiff from the Defendant." See ECF No. 8 at 1. Ms. Langley's filing totaled 162 pages, including 14 pages for the motion, and 148 pages of attached documents. An initial review of plaintiff's May 10, 2016 filing resulted in the filing of Ms. Langley's submission, by leave of the court, as an amended complaint. See ECF No. 8 (docket text). Upon further review of plaintiff's filing, the court has now determined that some of the attached documents are duplicative, already having been filed with Ms. Langley's February 2016 complaint; whereas some of the documents are newly filed.

For the above stated reasons, the court finds that Ms. Langley's February 2016 complaint was sufficient to assert her claim for relief and plaintiff's May 10, 2016 is more appropriately categorized as a supplemental filing to her original complaint. Accordingly, the court shall **DEEM** plaintiff's amended complaint (ECF No. 8) as a supplemental complaint (pages 1-14) and supplemental appendix (pages 15-162) to be included in this matter. [6]

[6] The Clerk's Office is directed to **deem** plaintiff's amended complaint, ECF No. 8, as a supplemental complaint, filed by leave of the court, as of the date it was submitted in this matter.

D. Defendant's Motions to Dismiss

On May 10, 2016, defendant filed a RCFC 12(b)(1) motion to dismiss Ms. Langley's original complaint, filed in February 2016. Def.'s MTD, ECF No. 9. Plaintiff filed a response on May 23, 2016. ECF No. 13.

Defendant electronically filed its motion to dismiss within minutes of the Clerk's Office filing plaintiff's amended complaint by leave of the court. ECF No. 8. With the court's leave, defendant filed an amended motion to dismiss on June 10, 2016, in which it responded to new information filed by plaintiff in her amended complaint, herein deemed her supplemental complaint. Def.'s Am. MTD, ECF No. 15. Plaintiff filed her response, ECF No. 16, and defendant filed a reply, ECF No. 17. Plaintiff attempted to file a sur-reply, without seeking leave of court to do so, which the court did not accept for filing. See Order, Aug. 1, 2016, ECF No. 18.

E. This Court's August 1, 2016 Dismissal Order and Defendant's Motion for Clarification

On August 1, 2016, the court issued a decision granting defendant's amended motion to dismiss plaintiff's complaint. Judgment entered that same day. ECF No. 21. See Opinion and Order, Aug. 1, 2016, ECF No. 20 ("Dismissal Order"), withdrawn and vacated, Order, Aug. 12, 2016, ECF No. 23. The court found that it lacked subject matter jurisdiction over plaintiff's property claims against either her ex-husband, Mr. Langley, or his divorce attorney, Ms. Green. Dismissal Order 5-6. The court also found that it lacked jurisdiction over Ms. Langley's income tax refund claims under I.R.C. § 6512(a). Id. at 6-8. Section 6512(a) states that

> [i]f the Secretary has mailed to the taxpayer a notice of deficiency under section 6212(a) (relating to deficiencies of income . . . taxes) and if the taxpayer files a petition with the Tax Court within the time prescribed in section 6213(a) . . ., no credit or refund of income tax for the same taxable year . . . to which such petition relates, in respect of which the Secretary has determined the deficiency shall be allowed or made and no suit by the taxpayer for the recovery of any part of the tax shall be instituted in any court except--

I.R.C. § 6512(a). The court further found that Ms. Langley's complaint did not fall within the limited exceptions to the prohibition on filing a claim in any court, including this court, for a claim heard by the Tax Court for the same taxable year. Dismissal Order 8 (citing I.R.C. § 6512(a)(1)). Accordingly, the court granted defendant's amended motion to dismiss the complaint. Id.

On August 12, 2016, by leave of court, defendant filed a motion for clarification. Def.'s Mot. Clarification, ECF No. 22. Defendant maintained that while dismissal of plaintiff's complaint was proper, section 6512(a) did not provide a proper basis for dismissal. Id. at 1. Specifically, defendant explained that section 6512(a) does not apply unless the IRS first mailed plaintiff a "notice of deficiency," and defendant insists that the IRS never mailed Ms. Langley a notice of deficiency. Id. at 1, 3.

Defendant acknowledged that one of Ms. Langley's Tax Court actions was in response to a "collection due proceeding" (CDP) instituted by the IRS against Ms. Langley. Id. at 3 (citing Tax Court case no. 17267-13L for tax years 2006, 2008, 2009, and 2010). But, defendant asserted, there is no statutory bar to prevent plaintiff from filing a complaint in this court after the Tax Court has adjudicated a CDP for the same tax years. Id. at 2. Accordingly, argued defendant, section 6512(a) provides no bar to plaintiff's complaint in this court.

The court granted defendant's motion for clarification, withdrew its August 1, 2016 decision, and directed the Clerk of Court to vacate judgment. Order, Aug. 12, 2016, ECF No. 23.

By leave of court, Ms. Langley filed a response which consisted of a 13-page brief, a 2-page Table of Contents, and 173 pages of attached documents. ECF No. 24. Ms. Langley took the position that the IRS did issue a notice of deficiency to her. Id. at 2 (citing to her "Exhibit 5, page two, and three."). Review of the entirety of plaintiff's marked Exhibit 5 shows that neither of the documents on which plaintiff relies originated from the IRS, and neither is a Notice of Deficiency. See id. at 48-57.

By leave of court, defendant filed a reply. ECF No. 27. Defendant states that while the documents provided by plaintiff include a "notice of determination," they do not include a "notice of deficiency," as is required for the applicability of section 6512(a). Id. at 2. Defendant is correct, Ms. Langley's documents do include an IRS Notice of Determination for tax years 2006, 2008, 2009, and 2010. See ECF No. 24, at 79.

Having reviewed the information in the parties' briefing on defendant's motion for clarification, the court now turns to defendant's amended motion to dismiss the complaint, ECF No. 15.

## II. Legal Standards

Pursuant to the Tucker Act, this court has limited jurisdiction. See 28 U.S.C. 1491(a)(1) (2012).

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. 1491(a)(1).

The Tucker Act serves as a waiver of sovereign immunity and provides a jurisdictional grant, but it does not create a substantive cause of action. See Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008). "[B]ecause the Tucker Act itself does not create a substantive cause of action, 'in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.'" Id. (quoting Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)).

A. RCFC 12(b)(1)

If subject matter jurisdiction is challenged, plaintiff must establish the court's jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). When a jurisdictional challenge is raised in a motion to dismiss, "the allegations stated in the complaint are taken as true and jurisdiction is decided on the face of the pleadings." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (quoting Shearin v. United States, 992 F.2d 1195, 1195-96 (Fed. Cir. 1993)). However, the court may look beyond the pleadings and "inquire into jurisdictional facts" to determine whether jurisdiction exists. Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991). If the court determines that it lacks subject matter jurisdiction, it must dismiss the complaint. RCFC 12(h)(3).

B. RCFC 12(b)(6)

To survive a motion to dismiss for failure to state a claim under RCFC 12(b)(6) the complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In evaluating a motion to dismiss, the court must accept the factual allegations as true, but the court is not required to accept the plaintiff's legal conclusions. Id.

C. Pro Se Litigants

A pro se complaint is to be liberally construed, and plaintiffs' filings must be held to 'less stringent standards than formal pleadings drafted by lawyers[.]'" Haines v. Kerner, 404 U.S. 519, 520-21 (1972)); Durr v. Nicholson, 400 F.3d 1375, 1380 (Fed. Cir. 2005) (stating a "background interpretive principle . . . is that pro se pleadings are to be liberally construed"). "Pro se petitioners are not expected to frame issues with the precision of a common law pleading." Roche v. United States Postal Serv., 828 F.2d 1555, 1558 (Fed. Cir. 1987).

While leniency will be extended with respect to the formalities of filing, pro se plaintiffs are not entitled to the relaxation of jurisdictional requirements. See Kelley v. Sec'y, U.S. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("[W]here the question is the calculation of the time limitations placed on the consent of the United States to suit, a court may not similarly take a liberal view of that jurisdictional requirement and set a different rule for pro se litigants only.").

III. Discussion

A. Plaintiff's Income Tax Refunds

Ms. Langley brings income tax refund claims totaling $51,0683.84 plus interest for five income tax years—specifically 2004, 2009, 2011, 2012, and 2013. Compl. 9; Suppl. Compl. 1. Prior to considering defendant's amended motion to dismiss, the court first reviews defendant's various RCFC 12 motions for compliance with RCFC 12(g).

1. RCFC 12(g) – Multiple Rule 12 Motions to Dismiss

As explained in the court's rules, "[e]xcept as provided in RCFC 12(h)(2) or (3), a party that makes a motion under [RCFC 12] must not make another motion under [RCFC 12] raising a defense or objection that was available to the party but omitted from its earlier motion." RCFC 12(g)(2).

Defendant filed a Motion to Dismiss on May 10, 2016, ECF No. 9, an Amended Motion to Dismiss on June 10, 2016, ECF No. 15, and a Motion for Clarification on August 12, 2016, ECF No. 22. Although defendant styled its August 2016 motion only as one for "clarification," defendant for the first time moved for RCFC 12(b)(6) dismissals for Ms. Langley's tax refund claims for 2011, 2012, and 2013. See Def.'s Mot. Clarification 4. That defendant made these arguments for the first time in its motion for clarification renders this motion a second amended RCFC 12 motion to dismiss the complaint, and the court treats it as such. Defendant's RCFC 12 arguments are summarized in the table below.

| **Defendant's RCFC 12 Arguments**<br>(Change from immediately preceding motion noted with ***bold italicized*** font) | | | |
|---|---|---|---|
| **Tax Year** | **Motion to Dismiss, ECF No. 9** | **Amended MTD, ECF No. 15** | **Motion for Clarification, ECF No. 22** |
| 2004 | None | ***12(b)(1) without prejudice*** | 12(b)(1) ***with prejudice*** |
| 2009 | 12(b)(1) without prejudice | ***12(b)(6) with prejudice*** | 12(b)(6) with prejudice |
| 2011 | 12(b)(1) without prejudice | 12(b)(1) without prejudice | ***12(b)(6) with prejudice*** |
| 2012 | 12(b)(1) without prejudice | 12(b)(1) without prejudice | ***12(b)(6) with prejudice*** |
| 2013 | 12(b)(1) without prejudice | 12(b)(1) without prejudice | ***12(b)(6) with prejudice*** |

The question is whether defendant's arguments offered for the first time in either its amended motion to dismiss or its motion for clarification comply with RCFC 12(g)(2).[7]

As to plaintiff's income tax year 2004 claim, defendant did not address it in its original motion to dismiss. Review of plaintiff's complaint shows that she requested a tax refund of $51,068.84, and cited to appendix pages 15 through 23 in support of this claim. See Compl. 9 (second request for relief). Review of the cited appendix shows signed, completed Forms 843 (Claim for Refund and Request for Abatement) for four tax years, 2009, 2011, 2012, and 2013, but no Form 843 for tax year 2004. See App. 20-23. Nonetheless, plaintiff asserts in her supplemental complaint that her tax refund claims covered five tax years, in particular, 2004, 2009, 2011, 2012, and 2013 and reasserts that her tax refund claims total $51,068.84. See Suppl. Compl. 1. Plaintiff described each tax refund claim, specifying the tax year and dollar amount for each claim, and provided an explanation for her claim with a citation to the attached documents. See id. at 7-8. Unlike her original complaint, plaintiff's supplemental complaint clarified that Ms. Langley sought a refund for tax year 2004 and set forth the basis for that claim. For these reasons, the court finds that defendant's RCFC 12(b)(1) without prejudice argument for income tax year 2004 in its amended motion to dismiss was not available at the time it filed its original motion to dismiss, and thus, is permissible under RCFC 12(g)(2).

As to plaintiff's tax year 2009 claim, defendant takes the position in its amended motion to dismiss that the court has jurisdiction over plaintiff's claim, but that plaintiff

7 There is no RCFC 12(g) issue with regard to defendant's amended motion to dismiss Ms. Langley's property claims, as it made no change in its Rule 12 arguments for those claims.

failed to state a claim for which relief may be granted. Def.'s Am. MTD 11-13. Defendant bases its change in argument on an IRS document plaintiff filed with her supplemental complaint showing that the "IRS formally disallowed the claim for refund [for tax year 2009] on April 14, 2016." Id. at 3 (citing ECF No. 8, at 57-58). The IRS document on which defendant relies was not included with plaintiff's original complaint. Because the document on which defendant relies was not available at the time defendant filed its original motion to dismiss, the court finds that defendant's RCFC 12(b)(6) with prejudice argument in its amended motion to dismiss for income tax year 2009 is permissible under RCFC 12(g)(2).

The court turns next to defendant's motion for clarification. For tax year 2004, defendant now seeks a RCFC 12(b)(1) dismissal with prejudice, rather than without prejudice. See Def.'s Mot. Clarification 4. Defendant offers no explanation for this change, and points to no information previously not available when it filed its amended motion to dismiss. Accordingly, the court finds that this argument is precluded by RCFC 12(g)(2).

As to income tax years 2011, 2012, and 2013, defendant's motion for clarification for the first time asks this court to dismiss Ms. Langley's tax refund claims under RCFC 12(b)(6) with prejudice, just as it requested for tax year 2009 in its amended motion to dismiss. Defendant explains that,

> [p]laintiff's claims for these years [2009, 2011, 2012, and 2013] are based on [26 U.S.C.] § 165, a purported casualty loss stemming from a lien placed on her property. But a lien is not a casualty loss. . . . Thus, even if this court has jurisdiction over plaintiff's tax refund suit for years 2009, 2011, 2012, and 2013, plaintiff's complaint fails to state a claim for these years upon which relief can be granted, and this court must dismiss plaintiff's complaint as to those tax years under Rule 12(b)(6).

Id.

As with its argument for tax year 2004, defendant offered no explanation for this change, and cited to no information previously not available when it filed its amended motion to dismiss. In addition, review of the court's docket shows that plaintiff filed no documents with this court between the filing on July 14, 2016 of defendant's reply in support of its amended motion to dismiss, and the filing of defendant's motion for clarification on August 12, 2016.

Review of plaintiff's complaint and supplemental complaint shows that she referred to an alleged casualty loss in both pleadings. See Compl. ¶ 41 (making reference to "the refund due to me for the $408,000.00 casualty loss Petitioner suffered on the conversion of Petitioner's assets by the state of Florida during divorce proceedings . . .

."); Suppl. Compl. 2 ("Plaintiff filed simultaneously . . . 1040X for each of the tax years 2008, 2009, 2010, 2011 and 2012 for the Plaintiff's 2010 $408,000 loss . . . ."); Suppl. Compl. 11 ("The Defendant's erroneous lien on my homestead, requested to preserve the amounts in escrow, is still recorded without Plaintiff's consent in the Defendant's judgment for 'making disbursements' that resulted in Plaintiff's 2010 $408,000.00 casualty loss."[8] (internal citations omitted)). Thus, in making new RCFC 12 arguments in its motion for clarification, defendant raises defenses or objections that were available to it when it filed its amended motion to dismiss.

To make a RCFC 12(b)(6) argument for tax years 2011, 2012, and 2013, defendant must have done so in either its original motion to dismiss or its amended motion to dismiss. Defendant did not do so. Thus, defendant cannot make a RCFC 12(b)(6) objection in its motion for clarification, "that was available . . . but omitted from its earlier motion." RCFC 12(g)(2).

Pursuant to RCFC 12(g)(2), the court will consider all of defendant's RCFC 12 arguments set forth in its amended motion to dismiss, but none of the RCFC 12 arguments set forth in its motion for clarification.

2. Income Tax Year 2004

According to her supplemental complaint, Ms. Langley's tax refund claim for 2004 is the same innocent spouse relief claim she asserted previously in the Tax Court. See Suppl. Compl. 7 (citing "USSC case 15-6929," a reference to the appellate history for Tax Court case no. 27396-12); see also supra Part I.B.1.

Defendant argues that Ms. Langley's 2004 tax refund claim is untimely because she did not file a "timely administrative claim for refund with the IRS in accordance with [26 U.S.C.] § 6511(a)." Def.'s Am. MTD. 9-10. Thus, defendant contends, "her tax refund suit as to 2004 is defective under [26 U.S.C.] § 7422(a)." Id. at 10.

Under I.R.C. § 7422(a), a plaintiff may not bring a tax refund claim in any court, including this court, "until a claim for refund . . . has been duly filed with the Secretary, according to the provisions of law in that regard." I.R.C. § 7422(a). Further, under I.R.C. § 6511(a), any claim for refund of an overpayment of tax "shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." I.R.C. § 6511(a).

---

8 Ms. Langley mischaracterizes the lien on her home. There is nothing in the record to suggest that the IRS ever held a tax lien on her home. Rather, the only lien on her home reflected in the record is an attorney's charging lien held by Ms. Green. See supra Part I.A.

Defendant states that Ms. Langley "filed her administrative claim for refund for tax year 2004 in 2011, six years after her return was filed and five years after the tax was paid." Def.'s Am. MTD 9-10 (citing ECF No. 8, at p. 23 ("B9")). The document on which defendant relies is the 2004 Account Transcript prepared by the IRS, in which it lists all activity in the taxpayer's account for tax year 2004. As reflected in the Account Transcript, the Langleys filed their joint tax return on May 30, 2005, and remitted their final tax payment on February 24, 2006. See Suppl. App. 23.

Under I.R.C. § 6511(a), Ms. Langley's administrative claim was due the later of three years after the return was filed, which would have been May 30, 2008, or two years after the tax was paid, which would have been February 25, 2008. The later date, May 30, 2008, was the due date for filing Ms. Langley's administrative claim with the IRS to obtain a refund for tax year 2004. But according to the 2004 Account Transcript, and as defendant has pointed out, Ms. Langley did not file her claim for Innocent Spouse Relief until April 18, 2011, almost three years past the due date.[9] See Suppl. App. 23.

Defendant is correct that because jurisdiction in this court is limited, plaintiff must show that prior to filing in this court, she filed a timely administrative claim with the Internal Revenue Service, as provided in I.R.C. §§ 6511(a) and 7422(a). The failure to do so deprives this court of its jurisdiction over such tax refund claim.

As this court has stated,

> [i]t is well-settled that satisfaction of these filing requirements [§ 7422(a) and § 6511(a) are] a jurisdictional prerequisite to suit in the Court of Federal Claims. Sun Chem. Corp. v. United States, 698 F.2d 1203, 1206 (Fed. Cir. 1983) ("It is a well-established rule that a timely, sufficient claim for refund is a jurisdictional prerequisite to a refund suit.") (citations omitted) . . . .

Martinez v. United States, No. 13-107T, 2013 WL 3940958, at *3 (Fed. Cl. July 25, 2013). This jurisdictional rule for a claim brought under I.R.C. § 6015(f), like Ms.

---

9 Documents in the record suggest that Ms. Langley first filed an Innocent Spouse Relief claim on June 5, 2009, not April 18, 2011. See ECF No. 24, at 168-170 (Completed Form 8857 Request for Innocent Spouse Relief, dated May 18, 2009); ECF No. 24, at 119 (Oct. 22, 2012 IRS letter referencing a Form 8857 filed on June 5, 2009). The IRS denied this claim on June 16, 2009, because there were no outstanding payments due for tax year 2004. See ECF No. 24, at 171. It is unclear why this earlier June 2009 Form 8857 is not reflected in Ms. Langley's 2004 Account Transcript. Regardless, even if the court were to credit Ms. Langley with having first filed on June 5, 2009 her administrative claim for a refund for tax year 2004, that claim would still be untimely because it was filed more than one year after the May 30, 2008 due date.

Langley's, does not allow for exceptions. See Barker v. United States, No. 05-1143T, 2006 WL 2472656, at *2 (Fed. Cl. July 19, 2006) (finding that the restrictions of 26 U.S.C. § 6511 "apply to all refund claims, including claims based on the innocent spouse provisions" (citing Yuen v. United States, 825 F.2d 244, 245 (9th Cir. 1987); Choate v. United States, 218 F.R.D. 677, 678-79 (S.D. Cal. 2003)).

Because Ms. Langley filed her 2004 administrative claim with the IRS sometime after the May 30, 2008 due date, it was untimely. Under I.R.C. §§ 6511(a) and 7422(a), the court lacks jurisdiction to hear her tax refund claim for 2004. For this reason, defendant's RCFC 12(b)(1) amended motion to dismiss Ms. Langley's tax refund claim for 2004 is **GRANTED**.

3. Income Tax Year 2009

Although defendant concedes jurisdiction for Ms. Langley's 2009 tax refund claim, Def.'s Am. MTD 11, the court has an independent obligation to satisfy itself that it has jurisdiction to hear the claim. See RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); PIN/NIP, Inc. v. Platte Chem. Co., 304 F.3d 1235, 1241 (Fed. Cir. 2002) ("[A] court must satisfy itself that it has jurisdiction to hear and decide a case before proceeding to the merits."); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). Accordingly, prior to considering defendant's RCFC 12(b)(6) amended motion to dismiss, the court considers whether it has jurisdiction over plaintiff's claim.

a. Whether the Court has Jurisdiction over Plaintiff's Claim

Ms. Langley completed and signed a Claim for Refund and Request for Abatement (Form 843) for tax year 2009 on October 29, 2015.[10] See Suppl. App. 24. Defendant claims that it "appears" that the IRS disallowed Ms. Langley's claim on April 14, 2016. Def.'s Am. MTD 10 n.8. As defendant explained,

> [b]ased on information plaintiff provided on May 10, 2016, it appears that on April 14, 2016, the IRS did disallow her claim for refund for 2009 filed on October 29, 2015. Thus, her claim for refund for 2009 appears to be timely . . . .

---

[10] According to the IRS, it received this claim on November 30, 2015. See Suppl. App. 57. That Ms. Langley may have mailed her Form 843 after the date on which she signed the Form, and that even less time may have elapsed between the filing of the Form 843 with the IRS and the filing of her Complaint with this court, does not bear on the court's determination of jurisdiction.

Id. Defendant's reference to information provided on May 10, 2016 is a reference to plaintiff's supplemental complaint and supplemental appendix, ECF No. 8.

Defendant is correct that Ms. Langley included an April 14, 2016 IRS letter in which the IRS disallowed her income tax year 2009 claim, due to its untimely filing. See Suppl. App. 57. To be clear, the IRS disallowed Ms. Langley's 2009 tax refund claim on April 14, 2016, two months after Ms. Langley filed her complaint in this court on February 10, 2016. Although the court generally determines jurisdiction at the time the original complaint is filed, the Federal Circuit has recognized limited exceptions to this general rule, and determined jurisdiction based on a supplemental pleading. See Cent. Pines Land Co., L.L.C. v. United States, 697 F.3d 1360, 1365-66 (Fed. Cir. 2012). As the Federal Circuit explained,

> [g]enerally, "'jurisdiction of the court depends upon the state of things at the time of the action brought.'" Grupo Dataflux v. Atlas Global Grp., 541 U.S. 567, 570 (2004) (quoting Mollan v. Torrance, 9 Wheat. 537, 539, 6 L.Ed. 154 (1824)). [However,] we have held that certain circumstances may exist in which a supplemental complaint can cure a defect in subject matter jurisdiction . . . [But], if a statute contains an express prohibition against filing suit, then a supplemental complaint cannot cure the lack of jurisdiction existing at the onset. Black, 93 F.3d at 790 (citing McNeil v. United States, 508 U.S. 106, 110–11 (1993), and Hallstrom v. Tillamook Cnty., 493 U.S. 20, 25–26 (1989)). It would defeat the purpose of the prohibition to permit a plaintiff to file his complaint during the prohibited period and then, after the prohibited period expired, rely on a supplemental complaint to cure the jurisdictional defect. Id.

Id.

Section 6532(a)(1) of the Internal Revenue Code states that

> [n]o suit or proceeding under section 7422(a) for the recovery of any internal revenue tax . . . shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time . . . .

26 U.S.C. § 6532(a)(1) (2012). Under Central Pines Land Company, jurisdiction in this case is determined at the time plaintiff filed her original complaint, not at the time she filed her supplemental complaint. Ms. Langley filed her Form 843 for tax year 2009 no earlier than October 29, 2015, six months from which was April 29, 2016. Because Ms. Langley filed her complaint on February 10, 2016, she did so prior to the expiration of the six month period required by section 6532(a)(1). Ms. Langley's complaint was thus

untimely, and for that reason, the court lacks jurisdiction over her tax refund claim for 2009. Under RCFC 12(h)(3), the court **DISMISSES** Ms. Langley's income tax refund claim for 2009 for lack of jurisdiction.

In the alternative and for the sake of completeness, the court considers defendant's RCFC 12(b)(6) argument.

b. Defendant's RCFC 12(b)(6) Amended Motion to Dismiss

In defendant's view, Ms. Langley's refund claim for tax year 2009 stems from an amended tax return Ms. Langley timely filed for tax year 2010. See Def.'s Am. MTD 4. As defendant stated,

> [p]laintiff's claim for 2009 stems from a carry back of a purported casualty loss that occurred in 2010. Plaintiff bases this casualty loss on either the foreclosure of one . . . property in 2010 or a lien placed on [another] property in 2010. (Compl. . . .U.S. Court of Fed. Cl. Compl. Cover Sheet, stating "IRS Refund due and interest due from State of Fl. Official and int. damages for loss of use.") Plaintiff further states that "[d]efendant's erroneous lien on my homestead . . . resulted in [p]laintiff's 2010 $408,000 casualty loss." (Am. Compl., ECF No. 8, at p. [11].)

Id. The foreclosure and the lien to which defendant refers are the subjects of earlier legal actions in the state of Florida. See supra Part I.A. It is unclear from the record how Ms. Langley arrived at the asserted loss of $408,000, or whether Ms. Langley attributes this loss to either the lien or the foreclosure separately, or to both events. Regardless, a precise understanding of Ms. Langley's asserted casualty loss is not necessary to the court's decision.

Defendant argues that a "foreclosure or a lien is not . . . a casualty loss." Def.'s Am. MTD 12 (citing First Atlas Funding Corp. Through Kersting, 23 Cl. Ct. at 139-40; Vance v. Comm'r of Internal Revenue, 36 T.C. 54 7 (1961) (finding that a finance company's repossession of furniture where timely payments were not made was not a casualty loss to taxpayer)). Defendant further argues that as defined in I.R.C. § 165(a)—the relevant provision for evaluating the casualty losses that Ms. Langley has asserted—such losses would not qualify as a tax deductible casualty loss.

> Section 165(a) allows deductions for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." 26 U.S.C. § 165(a); see also Cottage Sav. Ass'n v. Comm'r of Internal Revenue, 499 U.S. 554, 567 (1991). Section 165(c)(3) states that "[i]n the case of an individual, the deduction under subsection (a) shall be limited to . . . losses of property not connected with a trade or business or a transaction entered into for profit,

> if such losses arise from fire, storm, shipwreck, or other casualty, or from theft." 26 U.S.C. § 165(c)(3); see also Maher v. Comm'r of Internal Revenue, 680 F.2d 91, 91 (11th Cir. 1982).

Id. at 11.

It is not clear to the court, however, that Ms. Langley's amended return for tax year 2010 claimed a deduction only for an impermissible casualty loss, as defendant urges. Among the documents Ms. Langley filed with her supplemental complaint was an August 1, 2014 letter that the IRS sent to Ms. Langley after it had reviewed her Form 1040X for tax year 2010. See Suppl. App. 58. In its letter, the IRS stated:

> Thank you for your amended return received 4/15/2014.
>
> We have adjusted your 2010 account per your amended return, however there was a change made to your tax decrease. Our records show your tax decrease as $1,483.00 and not the amount of $497.86 as you indicated on line 21 of your amended return. . . . You will be receiving a letter regarding your carryback claims under separate cover.

Id.

Because the IRS adjusted Ms. Langley's taxes based on her 2010 amended tax return, the court cannot conclude, as defendant has, that Ms. Langley sought a tax refund exclusively for an impermissible casualty loss. Accordingly, the court cannot conclude that a carry back of this claim to tax year 2009 is based solely on an impermissible casualty loss.

For this reason, defendant's RCFC 12(b)(6) amended motion to dismiss Ms. Langley's tax refund claim for 2009 for failure to state a claim is **DENIED**.

4. Income Tax Years 2011, 2012 and 2013

Defendant argues that the court lacks jurisdiction over Ms. Langley's tax refund claims for 2011, 2012, and 2013, because she filed her complaint in this court prematurely. Specifically, the government contends plaintiff filed suit prior to either of the statutory conditions precedent to filing an income tax refund suit—namely the expiration of six months from the date of filing an administrative request or the rendering of an IRS decision prior to the time of filing suit. See Def.'s Am. MTD 10 (citing I.R.C. §§ 6532(a), 7422(a)).

With regard to the six month time period, Ms. Langley signed Forms 843 on either October 29, 2015 (for income tax years 2011 and 2013) or November 7, 2015 (for

income tax year 2012). See Suppl. App. 25-27. Assuming that the date on each Form 843 corresponds to the filing date, the earliest Ms. Langley could have filed a timely complaint in this court for all three tax years would have been six months after November 7, 2015, or May 7, 2016. As Ms. Langley filed her complaint in this court on February 6, 2016, her complaint was untimely.

With regard to a rendered IRS decision, defendant has argued—and the court agrees—that "[t]here is no indication that the IRS disallowed the claims for refund for 2011, 2012, and 2013 that would allow plaintiff to file her complaint prior to the expiration of the six month period." Def.'s Am. MTD 10.

Accordingly, the court lacks jurisdiction over Ms. Langley's tax refund claims for 2011, 2012, and 2013. See I.R.C. §§ 6532(a), 7422(a)). Defendant's RCFC 12(b)(1) amended motion to dismiss Ms. Langley's income tax refund claims for 2011, 2012, and 2013 for lack of jurisdiction is **GRANTED**.

As explained supra Part III.A.1, the court will not consider defendant's alternative RCFC 12(b)(6) arguments for these tax years. The court notes that even if defendant's RCFC 12(b)(6) arguments were properly before this court, they would not have been persuasive.

In reviewing the Forms 843 that Ms. Langley filed, it appears that the tax refund claimed for 2012 may have been based on the 2010 amended tax return, as defendant argues. In the explanation section on the relevant Form 843, Ms. Langley referred to her "casualty loss claimed in 2010." See Suppl. App. 26. But as explained in the court's discussion of plaintiff's 2009 tax refund, supra Part III.A.3.b, the court cannot conclude that the tax refund claim based on Ms. Langley's amended tax return for 2010 was based on an impermissible casualty loss only.

In addition, the Forms 843 for tax years 2011 and 2013 make no mention of the 2010 casualty loss, and instead refer to an overpayment in 2013, resulting in a tax refund for that year. See Suppl. App. 25, 27. A June 24, 2014 IRS notice confirmed that Ms. Langley made an overpayment for tax year 2013, which it did not refund to Ms. Langley, but instead applied to three earlier tax years—2008, 2010, and 2011—for which it claimed Ms. Langley owed payment. See id. at 28. Examination of both the Forms 843 for tax years 2011 and 2013, and the IRS notice for tax year 2013, suggests that the refunds Ms. Langley claimed for tax years 2011 and 2013 were unrelated to her 2010 amended return or her alleged casualty loss. Because this assertion was the sole basis for defendant's RCFC 12(b)(6) argument, that argument would have been unavailing. See Def.'s Mot. Clarification 4.

B. Plaintiff's Property Claims

Remaining are Ms. Langley's two property claims. See Compl. 9-10 (first and third requests for relief); see also supra Part I.C. Because Ms. Langley is proceeding without counsel, the court is obliged to construe her complaint liberally. See Haines, 404 U.S. at 520-21; Durr, 400 F.3d at 1380. As the Federal Circuit has instructed, "[p]ro se petitioners are not expected to frame issues with the precision of a common law pleading." Roche, 828 F.2d at 1558.

Ms. Langley's claims to remove her ex-husband and Ms. Green from the title to her home could be interpreted as quiet-title claims.[11] Defendant argues that this court lacks jurisdiction over both property claims because this court's jurisdiction is limited to claims against the United States. Thus, this court cannot hear a quiet-title claim. Def.'s Am. MTD 6-7 (citing 28 U.S.C. 1491(a)(1); Price v. United States, 123 Fed. Cl. 560, 563 (2015); Dwen v. United States, 62 Fed. Cl. 76, 80 (2004)).

Defendant is correct. This court has limited jurisdiction; it may hear only claims brought against the United States. 28 U.S.C. 1491(a)(1). Ms. Langley's property claims are brought against two private individuals, her ex-husband, Barney Langley, and his divorce attorney, Suzanne Green. Ms. Langley has articulated no property claim against the United States. As an earlier court found,

> [p]lainly stated, the court is without jurisdiction to entertain a standalone claim to quiet title. Dwen v. United States, 62 Fed. Cl. 76, 80 (2004) (citing Sioux Tribe of Indians v. United States, 3 Cl. Ct. 536, 538 (1983) ("This court has the authority to issue money judgments only; it does not have the authority to decide questions of title to land."); Baskett v. United States, 2 Cl. Ct. 356, 363 (1983) ("This court has no jurisdiction to quiet title to land and thus, if plaintiffs seek to quiet title to the properties in question they are in the wrong court."). The case law is replete with instances where it has been recognized that a cause of action seeking possession of property falls outside of the court's jurisdiction. Oak Forest, Inc. v. United States, 23 Cl. Ct. 90, 94–96 (1991); Gila Gin Co. v. United States, 231 Ct. Cl. 1001, 1003, 1982 WL 25831 (1982); Yaist v. United States, 228 Ct. Cl. 281, 285–87, 656 F.2d 616 (1981); Bourgeois v. United States, 212 Ct. Cl. 32, 36 n.1, 545 F.2d 727 (1976).

Dwen, 62 Fed. Cl. at 80. To the extent Ms. Langley asks this court to quiet title to her home, it is without jurisdiction to hear such claim or to provide the relief she seeks.

---

[11] "A proceeding to establish a plaintiff's title to land by compelling the adverse claimant to establish a claim or be forever estopped from asserting it." *Action to quiet title*, Black's Law Dictionary (10th ed. 2014).

Alternatively, Ms. Langley's claims could be construed as a request that this court review the action taken by the Florida state court, when it granted Ms. Green an attorney's charging lien on Ms. Langley's home. This court also lacks jurisdiction over this claim. See, e.g., Jones v. United States, 440 F. App'x 916, 918 (Fed. Cir. 2011) (stating that the Court of Federal Claims does not have jurisdiction to review state court decisions).

With regard to Ms. Langley's characterization of the attorney's charging lien secured by Ms. Green as a "taking . . . by an elected official of the state of Florida," Ms. Langley has mischaracterized the facts. Compl. 10. The record shows that Ms. Green obtained the lien on Ms. Langley's home in her capacity as a private attorney representing Mr. Langley in divorce proceedings. That Ms. Green may have been elected to office in November 2014 does not disturb the charging lien she secured on Ms. Langley's home in May 2006. By definition, a charging lien in the State of Florida may only be secured by a private attorney, not by the state or a state official. As explained by a Florida district court,

> [c]harging liens are a creature of Florida common law. Zaklama v. Mount Sinai Med. Ctr., 906 F. 2d 650, 652 (11th Cir. 1990). Such a lien is an equitable right to have costs and fees due to an attorney for services rendered in a suit secured by the judgment or recovery in that suit. Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom, 428 So. 2d 1383, 1384 (Fla. 1983).

Gonzalez v. Am. Sec. Ins., Co., No. 15-cv-1515, 2016 WL 6901368, at *1 (M.D. Fla. Nov. 1, 2016). While the court is obliged to accept as true Ms. Langley's fact allegations, it is under no such obligation with regard to her asserted legal conclusions, including her conclusion that the lien on her home qualifies as a taking. See Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A dispute with a private individual over an attorney's charging lien granted by the Florida state court is simply not a taking by the state.

Finally, Ms. Langley seeks payment of escrow funds, over which apparently Ms. Green has had some involvement or control since June 2005. See Compl. 9-10 (third request for relief); supra Part I.C. Because Ms. Langley's divorce was initiated in 2004, and finalized in 2006, the June 2005 event to which she refers occurred during her divorce proceedings in a Florida state court. As stated before, this court lacks jurisdiction to review any decision by a state court. See, e.g., Jones, 440 F. App'x at 918.

For these reasons, the court finds it lacks subject matter jurisdiction over Ms. Langley's claims against her ex-husband, Barney Langley, or against his divorce

attorney, Suzanne Green. Defendant's RCFC 12(b)(1) amended motion to dismiss Ms. Langley's property claims is **GRANTED**.

IV. Conclusion

As explained herein, the court hereby **GRANTS-IN-PART** and **DENIES-IN-PART** defendant's amended motion to dismiss, filed June 10, 2016, ECF No. 15. Defendant's RCFC 12(b)(1) amended motion to dismiss Ms. Langley's income tax refund claims for 2004, 2011, 2012, and 2013 and her property claims are **GRANTED**. Defendant's RCFC 12(b)(6) motion to dismiss Ms. Langley's tax refund claim for 2009 is **DENIED**. Ms. Langley's tax refund claim for 2009 is **DISMISSED** for lack of jurisdiction sua sponte under RCFC 12(h)(3).

Accordingly, pursuant to RCFC 12(b)(1) and 12(h)(3), plaintiff's complaint is **DISMISSED** for lack of jurisdiction without prejudice. The Clerk of Court shall enter judgment for defendant.[12] No costs.

IT IS SO ORDERED.

PATRICIA E. CAMPBELL-SMITH
Chief Judge

---

12 Pursuant to Section I.C.2 of this opinion, the Clerk's Office is directed to **DEEM** plaintiff's amended complaint, ECF No. 8, as a supplemental complaint, filed by leave of the court, as of the date it was entered in this matter, May, 5, 2016.